CITY OF WYLIE, Texas, Appellant,

v.

Chris and Stephanie TAYLOR,
Appellees.

No. 05–11–00803–CV.

Court of Appeals of Texas,
Dallas.

March 22, 2012.

William W. Krueger, III, Kevin M. Curley, McKamie Krueger, LLP, Richardson, TX, for Appellant.

Evan Lane (Van) Shaw, Janet R. Randle, Law Office of Van Shaw, Dallas, TX, for Appellees.

Before Justices BRIDGES, LANG, and FILLMORE.

## OPINION

Opinion By Justice LANG.

In this interlocutory appeal, the City of Wylie appeals the trial court's order denying the City's plea to the jurisdiction. Appellees Chris and Stephanie Taylor filed suit against the City, alleging a damaged subterranean drainage pipe owned by the

City, and located partly on the Taylors' property, caused damage to the Taylors' home. The City filed a plea to the jurisdiction, arguing governmental immunity barred the appellees' claims against it, and the trial court denied the plea. In two related issues, the City argues it is entitled to governmental immunity and the trial court erred in finding it had jurisdiction over appellees' claims. We conclude the trial court erred when it denied the City's plea to the jurisdiction as to the Taylors' claims because those claims are barred by governmental immunity. The trial court's order is reversed, and we render an order of dismissal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Taylors retained a company to perform foundation repair to their home. During the course of the repair, the company discovered a leaking drainage pipe under the home. Believing the leaking drainage pipe caused the foundation damage to their home, the Taylors telephoned the City's Public Works Department on May 17, 2010 to report the repair company's discovery. That same day, the City investigated the property. Ten days later, the Taylors filed a "notice of claim" against the City, formally alleging the City's damaged drainage pipe had itself caused damage to the Taylors' home. The City replaced and relocated the pipe without acknowledging liability. The City argues it had "no knowledge or awareness" that the pipe was either leaking or damaged prior to May 17, 2010, when the Taylors telephoned the City of the problem with the drainage pipe.

On November 29, 2010, the Taylors filed suit against the City for damage to their home caused by the City's pipe, alleging claims under the Texas Tort Claims Act (TTCA) and the Texas Deceptive Trade Practices and Consumer Protection Act (DTPA). The City filed a plea to the jurisdiction, plea in abatement, special exceptions, general denial, and raised affirmative defenses. The trial court denied the City's plea to the jurisdiction and special exceptions. In two related issues on appeal, the City asserts that the trial court erred in "finding it had jurisdiction over [the Taylors'] claims" and that the City's governmental immunity bars the Taylors' claims.

## II. PLEA TO THE JURISDICTION

### A. Standard of Review

 A plea to the jurisdiction based on governmental immunity challenges a trial court's subject matter jurisdiction. *State v. Holland,* 221 S.W.3d 639, 642 (Tex. 2007); *see Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004); *see also City of Seagoville v. Lytle,* 227 S.W.3d 401, 408 (Tex.App.-Dallas 2007, no pet.). Subject matter jurisdiction may not be waived and may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993); *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.,* 234 S.W.3d 726, 735 (Tex.App.-Dallas 2007, pet. denied).

 Whether a trial court has subject matter jurisdiction is a question of law. *Holland,* 221 S.W.3d at 642; *Combined Specialty Ins. Co. v. Deese,* 266 S.W.3d 653, 657 (Tex.App.-Dallas 2008, no pet.). Accordingly, an appellate court reviews a challenge to the trial court's subject matter jurisdiction de novo. *Holland,* 221 S.W.3d at 642. "In performing this review, an appellate court does not look to the merits of the case, but considers only the pleadings and evidence relevant to the jurisdictional inquiry." *Lytle,* 227 S.W.3d at 408 (citing *Miranda,* 133 S.W.3d at 227).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, a reviewing court considers the relevant evidence to determine whether a fact question exists on the jurisdictional issue. *See Miranda*, 133 S.W.3d at 227. If the evidence raises a fact question on jurisdiction, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact finder. *Id.* at 227–28. If the relevant evidence is undisputed or fails to raise a fact question, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. We must look to the allegations in the pleadings, construe them in the plaintiff's favor, and look to the pleader's intent. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002); *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989). The plaintiff bears the burden to plead facts affirmatively demonstrating governmental immunity has been waived and the court has subject matter jurisdiction. *See Holland*, 221 S.W.3d at 642.

## B. Applicable Law

Governmental immunity includes both immunity from suit and immunity from liability. *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex.2006). Immunity from liability bars enforcement of a judgment against political subdivisions of the State, such as municipalities. *See id.; Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex.2006). "[E]ven if the State acknowledges liability on a claim, immunity from suit bars a remedy until the Legislature consents to suit." *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 324 (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003)). To ensure legislative control over that immunity is not lightly disturbed, that waiver must be "clear and unambiguous."

Tex. Gov't Code Ann. § 311.034 (West 2005); *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex.2010). "Thus, whether a governmental unit is immune from liability for a particular claim depends entirely upon the applicable statute." *Arnold v. Univ. of Texas Sw. Med. Ctr. at Dallas*, 279 S.W.3d 464, 467 (Tex. App.-Dallas 2009, no pet.) (citing *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998)).

Under the TTCA, the Legislature has provided a limited waiver for tort claims arising from either premises defects or special defects. Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a), (b) (West 2011); *Hayes*, 327 S.W.3d at 115–16; *see also City of Irving v. Seppy*, 301 S.W.3d 435, 441 (Tex.App.-Dallas 2009, no pet.) (citing Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021(1)(A), 101.021(2), 101.022, 101.025(a)). Unless the TTCA clearly and unambiguously waives immunity, a municipality maintains its immunity from suit and from tort liability for its own acts or the acts of its agents for its governmental functions. *See Gipson v. City of Dallas*, 247 S.W.3d 465, 469–70 (Tex.App.-Dallas 2008, pet. denied); *see also Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001); *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex.1998).

The type of duty owed a plaintiff is part of the waiver analysis under the TTCA. *Seppy*, 301 S.W.3d at 441 (citing Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021, 101.022). If a claim arises from a special defect, the governmental unit owes the same duty to warn that a private landowner owes an invitee. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992) (citing Tex. Civ. Prac. & Rem.Code Ann. § 101.022(b)). "That duty requires an owner to use ordi-

nary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware." *Id.* The Supreme Court has discussed the considerations relevant to determining whether a condition is a special defect:

> The Legislature does not define special defect but likens it to conditions "such as excavations or obstructions on highways, roads, or streets." TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b); *see also County of Harris v. Eaton,* 573 S.W.2d 177, 178–80 (Tex.1978) (construing "special defect" as including those defects of the same kind or class as those expressly mentioned in the statute). In *Denton County v. Beynon,* we reaffirmed that conditions can be special defects "only if they pose a threat to the ordinary users of a particular roadway." 283 S.W.3d 329, 331 (Tex.2009) (citing *Payne,* 838 S.W.2d at 238 n. 3). Whether a condition is a special defect is a question of law. *City of El Paso v. Bernal,* 986 S.W.2d 610, 611 (Tex.1999). In deciding this question, we have previously considered characteristics of the class of special defect, such as (1) the size of the condition, (2) whether the condition unexpectedly and physically impairs a vehicle's ability to travel on the road, (3) whether the condition presents some unusual quality apart from the ordinary course of events, and (4) whether the condition presents an unexpected and unusual danger to the ordinary users of the roadway. *See Tex. Dep't of Transp. v. York,* 284 S.W.3d 844, 847 (Tex.2009). The class of special defects contemplated by the statute is narrow.

*Hayes,* 327 S.W.3d at 116.

 "In an ordinary premises defect case, the governmental unit owes the plaintiff 'only the duty that a private person owes to a licensee on private proper-

ty.'" *Seppy,* 301 S.W.3d at 441 (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a)). "This limited duty requires the landowner to avoid injuring the claimant through willful, wanton, or grossly negligent conduct and to use ordinary care either to warn the licensee of, or make reasonably safe, a dangerous condition of which the landowner is aware and the licensee is not." *Id.* (citing *Payne,* 838 S.W.2d at 237). Actual knowledge of the dangerous condition is required. *State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974). Constructive knowledge of the defect is insufficient. *See id.*

"Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart,* 249 S.W.3d 412, 414–15 (Tex.2008); *City of Dallas v. Thompson,* 210 S.W.3d 601, 603 (Tex.2006). In determining whether a landowner such as the City has actual knowledge of a dangerous condition, "courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Univ. of Tex.-Pan Am. v. Aguilar,* 251 S.W.3d 511, 513 (Tex.2008); *see also City of Dallas v. Reed,* 258 S.W.3d 620, 622–23 (Tex.2008) (no prior accidents or complaints about road condition contributed to conclusion of no actual knowledge at the time of the motorcycle accident). Lack of notice of similar accidents from third parties, however, does not conclusively negate actual knowledge. *Mitchell v. City of Dallas,* 855 S.W.2d 741, 749 (Tex.App.-Dallas 1993, *aff'd,* 870 S.W.2d 21 (Tex. 1994). Actual knowledge of an unreasonably dangerous condition can sometimes be proven through circumstantial

evidence. *See City of Austin v. Leggett,* 257 S.W.3d 456, 476 (Tex.App.-Austin 2008, pet. denied); *see also Simons v. City of Austin,* 921 S.W.2d 524, 528 & n. 2 (Tex.App.-Austin 1996, writ denied) (concluding evidence of two experts who testified of dangerous condition and city "must have known" of the danger was circumstantial evidence of city's actual knowledge). "Circumstantial evidence establishes actual knowledge when it 'either directly or by reasonable inference' supports that conclusion." *Stewart,* 249 S.W.3d at 415 (quoting *State v. Gonzalez,* 82 S.W.3d 322, 330 (Tex.2002)). *Seppy,* 301 S.W.3d at 444.

■ Although "[t]he [TTCA] generally waives the state's immunity from suit for certain tort claims involving ... premises defects ..., the [TTCA] preserves immunity for discretionary decisions under the 'discretionary powers' exception to the waiver." *Stephen F. Austin State Univ. v. Flynn,* 228 S.W.3d 653, 657 (Tex.2007). Further, "a city's immunity is preserved not only for its discretionary or public-policy decisions, but also for its failure to act when no particular action is required by law." *City of Dallas v. Hughes,* 344 S.W.3d 549, 555 (Tex.App.-Dallas 2011, no pet.). The discretionary powers exception's purpose is to "avoid judicial review or interference with governmental policy decisions." *Perez v. City of Dallas,* 180 S.W.3d 906, 911 (Tex.App.-Dallas 2005, no pet.).

■ "Whether a particular governmental activity is discretionary and within the exception to the waiver of immunity is a question of law." *Hughes,* 344 S.W.3d at 556. There is more than one test courts employ in determining what constitutes a protected "discretionary" decision. *See id.* One test distinguishes between policy- and operational-level decisions, where a governmental unit is immune from liability if

damage or injury results from the formulation of policy, but is not immune if the same damage or injury is caused by the negligent implementation of that policy. *See Mitchell,* 855 S.W.2d at 745. The other test distinguishes between design and maintenance, such as the distinction between designing a bridge without lighting, for which there is immunity, and failing to maintain lighting that was installed, for which there may not be immunity. *See Tarrant Cnty. Water Control v. Crossland,* 781 S.W.2d 427, 433 (Tex.App.-Fort Worth 1989, writ denied). In employing these tests, we must liberally construe the TTCA, *Robinson v. Cent. Tex. MHMR Ctr.,* 780 S.W.2d 169, 170 (Tex.1989), while also recognizing that the waiver of immunity is "limited, not unlimited," *Bossley,* 968 S.W.2d at 341 (Tex.1998).

## C. Application of Law to Facts

In their first amended petition, the Taylors pleaded

the CITY OF WYLIE failed to properly implement the maintenance policy regarding the drainage pipe located in part on [the Taylors'] property.... [The City] further failed to properly maintain the drainage pipe located in part on [the Taylors'] property. Said failure to properly implement their maintenance policy and failure to properly maintain the drainage pipe created and/or allowed a special defect as that term is defined in the Texas Civil Practice & Remedies Code § 101.022(b) to exist.... Additionally, the drainage pipe defects were a premise defect as the term is defined in Texas Civil Practice & Remedies Code § 101.021.

The Taylors do not elaborate further as to the nature of the alleged "special defect" or the alleged "premise defect." The Taylors also alleged several violations of the DTPA, including "failing to properly main-

tain the drainage pipe" and "negligent implementation of [the City's] maintenance policy of the drainage pipe." The City responds it is immune from the Taylors' alleged claim under § 101.021 because, according to the pleadings, there is no allegation of the use of motor-driven vehicles or equipment nor claims of damages for personal injury or death. Further, the City contends it is immune from the Taylors' alleged claim under § 101.022 because, according to the pleadings, as matter of law, there is no premises or special defects alleged. Finally, the City contends that the Taylors' DTPA claims are barred by "sovereign immunity."

"The legislature granted a limited waiver of immunity in the [TTCA], which allows suits to be brought against governmental units in limited circumstances." *Teague v. City of Dallas*, 344 S.W.3d 434, 438 (Tex.App.-Dallas 2011, pet. denied). "When the governmental unit is a municipality, the waiver of immunity analysis begins with the determination of whether the governmental unit was engaged in a governmental function at the time of the action giving rise to the claim." *Id.* (citing TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)). "Once it is determined that a governmental function is involved, the question becomes whether the allegations meet the requirements of section 101.021." *Id.* Section 101.021 provides that a governmental unit is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property. . . .

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021.

■■■■ Although the parties have not addressed the first step of the immunity waiver analysis, we conclude the City's "maintenance policy regarding the drainage pipes" involves a governmental function as defined in § 101.0215(a)(9) (sanitary and storm sewers). *See Teague*, 344 S.W.3d at 438. "A claim against a municipality arising from the performance of a governmental function is barred by immunity unless a statutory waiver of immunity applies." *City of Dallas v. Hillis*, 308 S.W.3d 526, 536 (Tex.App.-Dallas 2010, no pet.).

The Taylors have the burden of affirmatively demonstrating that a statutory waiver of immunity applies and that the trial court has jurisdiction. *See Miranda*, 133 S.W.3d at 225–26; *see also Lytle*, 227 S.W.3d at 408. Their first amended petition makes allegations of the alleged waiver. We must look to the allegations in the pleadings, construe them in the plaintiff's favor, and consider the pleader's intent. *Brown*, 80 S.W.3d at 555. The allegations assert the City failed to "properly implement" its maintenance policy regarding the drainage pipe, failed to properly maintain the drainage pipe located in part on the Taylors' property, and that failure to "properly implement the[ ] maintenance policy and failure to properly maintain the drainage pipe created and/or allowed a special defect . . . to exist." Construing these allegations in the Taylors' favor to consider their intent, we conclude the Taylors have alleged the City negligently implemented its policy to maintain drainage pipes, causing a special defect that, in turn,

presumably caused "injuries and damages to the [Taylors]."

■ First, we address whether the trial court had jurisdiction pursuant to the TTCA over what the Taylors assert is a special defect caused by the City's failure to properly implement its maintenance policy. Initially, we must determine whether the alleged injury constitutes a special defect under the TTCA. Although the TTCA does not define "special defect," it "likens it to 'excavations or obstructions' that exist 'on' the roadway surface." *Beynon*, 283 S.W.3d at 331 (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(b)). Although a special defect need not be "on" a roadway, it must " 'pose a threat to the ordinary users of a particular roadway.' " *Id.* at 331 (quoting *Payne*, 838 S.W.2d at 238 n. 3). The special defect alleged in this case is a subterranean drainage pipe buried beneath the Taylors' home. There is no allegation that it "pose[s] a threat to the ordinary users of a particular roadway." *Id.* We conclude the Taylors have failed to allege a claim within the "narrow" class of special defects contemplated by the statute. *See Hayes*, 327 S.W.3d at 116.

■ Second, we address whether the trial court had jurisdiction over what the Taylors assert is a premises defect claim under the TTCA. As with the assertion of the special defect, the Taylors bear the burden of pleading and proving consent and waiver of immunity from suit by the City as to the premises defect claim. *Tex. Dept. of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). The TTCA "provides a limited waiver of sovereign immunity when a claim arises from a premise defect." *Stewart*, 249 S.W.3d at 413. To establish a waiver of immunity, the appellees must show the City "had actual knowledge 'of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition c[ould] develop over

time.' " *Id.* at 413–14 (alteration in original) (quoting *Thompson*, 210 S.W.3d at 603). In *Stewart*, the City of Corsicana offered evidence that the first time it learned that a dangerous condition existed was when the claimant called 911 to report the problem, which was "after the dangerous condition had arisen." *Id.* at 414. Based on this, the court concluded: "It is undisputed that no direct evidence was offered that the City knew [a dangerous condition existed] prior to the accident." *Id.*

The Taylors did not allege before the trial court that the City had actual knowledge that the drainage pipe beneath their home constituted a dangerous condition until the Taylors themselves telephoned the City in May 2010. By the time of that phone call, the Taylors allege their home had already been damaged. In this case, it is undisputed that no direct evidence was offered that the City had actual knowledge the drainage pipe was damaged prior to the damage to the Taylors' home. We conclude the Taylors failed to raise a fact issue regarding the City's knowledge of a dangerous condition. The Taylors asserted claim of premises defect under the TTCA is barred by governmental immunity.

Third, we consider whether the trial court has jurisdiction over the Taylors' DTPA claims. The City is presumed to be immune, but that immunity can be waived by "clear and unambiguous legislative consent." *Dallas Cnty. v. Rischon Dev. Corp.*, 242 S.W.3d 90, 94 (Tex.App.-Dallas 2007, no pet.). The Legislature failed to include governmental entities in the DTPA's definition of "person." *Id.* at 95 (citing TEX. BUS. & COM.CODE ANN. § 17.45(3) (West 2002)). After analyzing the sections of the DTPA relevant to the Taylors' claims, we conclude the Legislature has not therein expressed "a clear

and unambiguous waiver of governmental immunity." *Id.* We conclude the Taylors' DTPA claims are barred by governmental immunity, and the trial court lacks jurisdiction over them.

Fourth, we review whether the trial court had jurisdiction over the Taylors' claim for damages caused by alleged mental anguish. The City responds that "mental anguish damages tied to alleged property damage ... are not recoverable." In their first amended petition, the Taylors pleaded they "have suffered great physical and mental pain, suffering and anguish, and in all reasonable probability, will continue to suffer in this manner for a long time into the future." The Taylors' pleadings do not expressly identify the cause of the mental anguish. However, we construe the pleadings in the Taylors' favor to assert the mental anguish damages were caused by the drainage pipe having allegedly damaged the Taylors' home. Because we have already concluded the Taylors have failed to assert a claim under the DTPA or TTCA, we need not address the mental anguish claim further. *See City of Tyler v. Likes,* 962 S.W.2d 489, 497 (Tex. 1997) ("[M]ental anguish based solely on negligent property damage is not compensable [under the TTCA] as a matter of law."); *Boyles v. Kerr,* 855 S.W.2d 593, 598 (Tex.1993) ("[M]ental anguish damages may not be recovered under the [DTPA], absent proof of a willful or grossly negligent violation.")

Finally, in their first amended petition, the Taylors pleaded the City has refused to pay for the Taylors' "damages" and the Taylors "have been compelled to engage [their attorneys] for the prosecution and collection of the claim." The Taylors pleaded: "In accordance with V.T.C.A., Civil Practice & Remedies Code Section 38.001 and/or the Deceptive Trade Practices Act §§ 17.506 and 17.50(c), Plaintiffs are entitled to reimbursement from Defendant for attorney's fees incurred during trial and [appeal]." However, having concluded the City has not waived immunity as to any of the claims asserted by the Taylors, and in light of the claims for attorney's fees being premised on the failure of the City to pay their "damages," all of which purports to arise from their barred claim, the claim for attorney's fees is likewise barred. *See Gulf States Utils. Co. v. Low,* 79 S.W.3d 561, 567 (Tex.2002) ("Without an actual-damages recovery, a party is not entitled to an attorney's fee recovery [under the DTPA]."); *Gentry v. Squires Constr., Inc.,* 188 S.W.3d 396, 406 (Tex.App.-Dallas 2006, no pet.) ("To recover attorneys' fees under section 38.001, (1) a party must prevail on a cause of action for which attorneys' fees are recoverable and (2) recover damages.").

We conclude the trial court erred in denying the City's plea to the jurisdiction. Accordingly, the trial court's order denying the City's plea is reversed. We render judgment granting the plea to the jurisdiction and dismiss the case for lack of jurisdiction.

## III. CONCLUSION

We conclude the trial court erred in denying the City's plea to the jurisdiction, reverse the trial court's order denying the City's plea to the jurisdiction, and render judgment dismissing the case for lack of jurisdiction.