**TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN**

NO. 03-11-00817-CV

**Caroline Miller, Catherine Austin, Dewey T. Bell, Kimberly Bell, Mike Bellows, Rhonda Bellows, Curtis Dwayne Breaux, Lisa Gayle Breaux, Thomas J. Canton, Vera Canton, Warren J. Clark, Patricia K. Clark, Barbara Garry, Donna Ann Green, Clifford Guidry, Shirley Guidry, Bradley K. Kloefkorn, Patricia C. Kloefkorn, Jerald Paul LeBlanc, Janet Elizabeth LeBlanc, Don Lofton, Mattie L. Lofton, Joel Daniel Love Jr., Drew Potter, Ronald James Prince, Roger D. Rashall Jr., Roger D. Rashall Sr., Cynthia G. Rashall, Larry C. Shoemaker, Martha Shoemaker, Anton Smikal, and Martha Smikal, Appellants**

v.

**South East Texas Regional Planning Commission, Jefferson County Appraisal District, Roland R. Bieber, and Jefferson County Drainage District No. 6, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-10-003240, HONORABLE TIM SULAK, JUDGE PRESIDING**

**M E M O R A N D U M   O P I N I O N**

After appellants' homes were damaged by Hurricane Ike, they brought suit seeking damages and declaratory relief against multiple governmental entities, officials, and others. In June 2011, the trial court granted the motion to dismiss, plea to the jurisdiction, and motion for summary judgment of appellees South East Texas Regional Planning Commission, Jefferson County Appraisal District (JCAD), Roland R. Bieber, and Jefferson County Drainage District No. 6.[1]

---

[1] We refer to the Commission, the JCAD, and the District collectively as the local governmental entities.

Appellants raise five issues on appeal, challenging the trial court's ruling. For the reasons that follow, we overrule appellants' issues and affirm the trial court's order.[2]

## BACKGROUND

Appellants filed suit on September 13, 2010, against 24 defendants, including the State of Texas, local governmental entities and officials, private companies, and individual surveyors. Appellants asserted the same federal and state causes of action against each defendant based upon their alleged actions and inactions surrounding appellants' property damage sustained during Hurricane Ike. The causes of action were: (i) federal statutory and constitutional claims, *see* U.S. Const. amend. I, V; 42 U.S.C. §§ 1983, 1985, 1988, 5121–5207; (ii) state statutory and constitutional claims, *see* Tex. Const. art. I, § 17; Tex. Bus. & Com. Code §§ 17.46–.59 (DTPA), 27.01 (real estate fraud); Tex. Loc. Gov't Code §§ 271.001–.907; (iii) fraud; (iv) breach of contract; (v) fraud in the inducement of a contract; (vi) negligence and gross negligence; (vii) civil conspiracy; and (viii) claims for declaratory relief, *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011 (UDJA).[3]

Appellants factually pleaded that their homes were built in the 100-year flood plain as a result of the "mishandling of information about the elevation of their homes by Jefferson

---

[2] In a separate but related appeal, 03-11-00521-CV, appellants challenge a final judgment in favor of Jefferson County. In August 2011, the trial court granted Jefferson County's motion for summary judgment and no evidence summary judgment and severed the claims against Jefferson County into a separate cause number. The appeal from that judgment was consolidated with this appeal for purposes of oral argument only. Appellants raise the same five issues in both appeals. By opinion issued this same date, we affirm the trial court's judgment in favor of Jefferson County.

[3] The defendants, other than appellees and Jefferson County, were non-suited or dismissed from the case prior to the final judgment. They are not parties on appeal.

County officials, surveyors and others"; the defendants published, approved, and concealed false flood plain and elevation data prior to Hurricane Ike; and the defendants failed to warn appellants despite knowing that the elevations concerning their properties were incorrect. Appellants also sought damages arising out of their participation in a Federal Emergency Management Agency (FEMA) flood buyout program. As part of this program, appellants, except appellant Drew Potter, sold their property to Jefferson County. Appellants alleged that defendants misled them and that funds were available to pay additional amounts to them for their property but were used for other purposes. Appellants alleged: "FEMA agreed to pay the statutory maximum of 75% of the value of each of the Plaintiffs' homes and the State of Texas was obligated to pay the remaining 25% from funds made available by the state." They sought a declaration that "the State of Texas [was] required to pay to Plaintiffs the 25% matching funds in the FEMA buyout and a mandate that the Texas Comptroller of Public Accounts make such payment instanter."

In January 2011, appellees filed a plea to the jurisdiction, motion to dismiss, and motion for traditional and no-evidence summary judgment. The local governmental entities asserted governmental immunity with respect to the state claims, and Bieber, the Chief Appraiser for JCAD, asserted official and qualified immunity from appellants' claims. They sought to have the state claims asserted against Bieber dismissed based upon the election of remedies section of the Texas Tort Claims Act (TTCA). *See* Tex. Civ. Prac. & Rem. Code § 101.106(e). They further asserted that, "as a matter of law," they "were entitled to summary judgment on all claims alleged by Plaintiffs as the pleadings, evidence, and lack of evidence, do not specifically plead, or establish, a claim against Defendants under the statutes, constitutional or common law causes of action pled."

3

Appellants filed a response to appellees' plea to the jurisdiction, motion to dismiss, and motion for traditional and no-evidence summary judgment in June 2011. One of their arguments was that appellees' motion was improper because they should have filed special exceptions. Attached to their response was a preliminary report dated March 26, 2009, by the Governor's Commission for Disaster Recovery and Renewal. Appellees filed a reply and addressed appellants' contention that they should have filed special exceptions. They argued that appellants should not be allowed an opportunity to amend their pleadings because they had failed to show how they would amend their pleadings to plead a viable claim against appellees and that repleading in this case would serve no legitimate purpose.

After a hearing, the trial court granted appellees' plea and motions. After the trial court's order became final, this appeal followed.

## ANALYSIS

Appellants raise five issues on appeal. They contend: (i) they have a private cause of action under the Stafford Act, (ii) appellees were required to have special exceptions sustained prior to having appellants' suit dismissed for failure to state a claim, (iii) Texas immunity law does not protect appellees from liability for each of the causes of action appellants asserted, (iv) provisions of chapter 271 of the local government code allow suit against local government entities and their employees, and (v) the immunity defense is "abrogated" because the statutes at issue required ministerial acts.

***Special Exceptions***

We begin with appellants' second issue. Appellants argue that appellees' motion was "essentially no more than a tarted-up Special Exception," that appellees may not bypass the special exceptions requirement, and that the trial court should not have granted appellees' motion without first requiring appellees to have special exceptions sustained. *See* Tex. R. Civ. P. 91 (special exception shall "point out particular pleading excepted to" and "the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleadings excepted to"). Appellees counter that their plea to the jurisdiction and motion to dismiss were not based upon the pleading's lack of clarity but appellants' failure to allege an actionable claim against appellees. Appellees challenged the trial court's jurisdiction to hear appellants' claims, as factually pleaded, based upon, among other grounds, governmental and official immunity.

"A plea to the jurisdiction is a dilatory plea, the purpose of which is generally to defeat an action 'without regard to whether the claims asserted have merit.'" *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). A plea to the jurisdiction may be based solely on the plaintiffs' pleadings. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). "Typically, the plea challenges whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case." *Garcia*, 372 S.W.3d at 635 (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)); *see Miranda*, 133 S.W.3d at 226 (noting that focus for plea challenging pleadings is whether the pleaded facts affirmatively demonstrate the court's jurisdiction to hear the case).

Governmental immunity, which is properly asserted in a plea to the jurisdiction, deprives a trial court of subject matter jurisdiction in suits against political subdivisions of the State unless the political subdivision consents to suit. *See Rolling Plains Groundwater Conservation Dist. v. City of Aspermont*, 353 S.W.3d 756, 759 (Tex. 2011) (per curiam) (noting that political subdivisions of the State are "entitled to governmental immunity from a suit for money damages unless it has been waived"); *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009) (noting that governmental immunity protects political subdivisions of the State, such as hospital districts, from lawsuits for damages); *Miranda*, 133 S.W.3d at 225–26 (noting that sovereign immunity "properly asserted in a plea to the jurisdiction").

Similarly, a governmental official may seek dismissal in a plea to the jurisdiction. "Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer with one exception: an action alleging that the employee acted *ultra vires*." *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011); *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009) (describing ultra vires claims).[4] "With that exception, an employee sued in his official capacity has the same governmental immunity, derivatively as his government employer." *Franka*, 332 S.W.3d at 382–83. A government employee sued in his

---

[4] In the section of their briefing addressing their special exception issue, appellants argue that appellees "misunderstand or mischaracterize the nature of this suit." They state that their "suit is fundamentally, though not entirely, a suit over *ultra vires* government actions" and a "declaratory judgment action seeking construction of the federal Stafford Act and the obligations that Act imposes on various governmental actors and agencies." An ultra vires claim may only be asserted against a governmental actor in his official capacity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009). The only possible defendant subject to an ultra vires claim is Bieber, but appellants failed to plead facts or produce evidence that would support a finding that he committed an ultra vires act. *See id.* Further, a declaratory judgment action does not change the underlying nature of a suit, and it may not be used to circumvent immunity from a suit for money damages. *Id.* at 371.

6

individual capacity also may assert official or qualified immunity. Official immunity protects public employees "'from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority.'" *Id.* at 383 (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)). Qualified immunity provides similar protections for a government official as to federal claims. *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 428 n.3 (Tex. 2004). Once a defendant raises qualified immunity, a plaintiff must plead and prove that he can overcome the immunity or the claims may be dismissed. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

It is also well established that a governmental unit is immune from suit unless the immunity is waived by clear and unambiguous legislative consent. *See* Tex. Gov't Code § 311.034; *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). A plaintiff "must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity," *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *see Jones*, 8 S.W.3d at 638, or that immunity is inapplicable, *see Heinrich*, 284 S.W.3d at 372 (sovereign immunity does not prohibit "suits to require state officials to comply with statutory or constitutional provisions"). It was appellants' burden then to affirmatively demonstrate a valid waiver of immunity as to each of their claims or that immunity did not apply.

Appellees also sought dismissal of appellants' claims against Bieber, the chief appraiser for the JCAD, based upon the statutory election of remedies in section 101.106 of the TTCA. *See* Tex. Civ. Prac. & Rem. Code § 101.106. Section 101.106 states in relevant part:

(a)     The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any

7

suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

*Id*. § 101.106(a), (e); *see also Franka*, 332 S.W.3d at 369 (noting that section 101.106 interpreted to include all tort theories, not just those for which TTCA waives immunity).

We also note that appellants had five months to respond to the plea and dispositive motions. During that time, they did not amend their pleadings, and they have failed to show how they would amend their pleadings to cure the jurisdictional problems. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (declining to remand case in which plaintiff, on appeal, lost a plea to the jurisdiction based upon immunity because plaintiff's "pleading defects cannot be cured, and he has made no suggestion as to how to cure the jurisdictional defect" and noting that "pleading more facts in support of the breach of contract claim will not overcome Texas A&M's immunity from suit"); *see also Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 54–55 (Tex. 2003) (if pleading defect can be cured by amendment, not proper for trial court to grant summary judgment without first sustaining special exception and permitting party opportunity to cure defect). They also did not seek a continuance from the no-evidence motion for summary judgment. *See* Tex. R. Civ. P. 166a(g), (i).

We conclude that appellees were not required to have special exceptions sustained prior to obtaining the trial court's ruling on their plea to the jurisdiction and dispositive motions. We overrule appellants' second issue.

8

***Stafford Act Claims***

In their first issue, appellants contend that they have a private right of action under the federal Stafford Act consistent with Title IX precedent established in *Cannon v. University of Chicago*, 441 U.S. 677 (1979). *See* 42 U.S.C. §§ 5121–5207 (Stafford Act). The Stafford Act addresses federal disaster relief and assistance. *See id.*

Appellants have not cited, and we have not found, authority to support their contention that they have a private cause of action for damages under the Stafford Act against local governmental entities or their officials. *See, e.g.*, *Ridgely v. Federal Emergency Mgmt. Agency*, 512 F.3d 727, 729 (5th Cir. 2008) (action brought against FEMA for alleged constitutional violations in administering program under Stafford Act); *Sierra Club v. United States Army Corps of Eng'rs*, 446 F.3d 808, 813 n.l (8th Cir. 2006) (noting that "Stafford Act does not expressly provide for private rights of action"); *Diversified Carting, Inc. v. City of New York*, 423 F. Supp. 2d 85, 95–96 (S.D.N.Y. 2005) (noting that generally actions brought under Stafford Act are against FEMA and holding that the plaintiff did not have an express or implied right of recovery against non-federal governmental entities pursuant to Stafford Act).

Further, even if we were to conclude that there is a private cause of action under the Stafford Act, we would conclude that the trial court did not err by dismissing the Stafford Act claims against appellees. In their plea and motions, appellees asserted that appellants failed to factually plead or prove that appellees violated any provision of the Stafford Act or that any of the appellees were obligated to pay any amount to appellants under the Act or that the Stafford Act waives governmental immunity. Appellants factually pleaded: "Under the terms of the buyout program, as set forth in [the Stafford Act], FEMA agreed to pay the statutory maximum of 75% of

9

the value of each of the Plaintiffs' homes [under the Stafford Act] and the State of Texas was obligated to pay the remaining 25% from funds made available by the state." Appellants' pleaded facts affirmatively assert that their Stafford Act claims were against the State, not appellees. *See Whitley*, 104 S.W.3d at 542.

Appellants' evidence similarly does not support a Stafford Act violation by appellees. The only evidence attached to appellants' response to the plea to the jurisdiction and motions was the preliminary report to the Governor from March 2009. The report provides recommendations to address "the largest barriers to effective recovery and some vulnerabilities to future disasters" and recommends certain amendments to the Stafford Act. Appellants rely upon the following statement in the report that addressed a 25% matching requirement: "For example, many of the funds disbursed through the act require a 25% match from the local jurisdiction." This statement, however, does not identify any legal obligation that appellees had to appellants under the Stafford Act that would subject appellees to a suit for damages.[5] We overrule appellants' first issue.

---

[5] Appellants filed a post-submission brief globally citing the Stafford Act as well as related federal rules that they contend appellees violated. *See* 42 U.S.C. §§ 5121–5207; 44 C.F.R. §§ 206.203, 206.430–.440. None of these provisions, however, supports a private cause of action against a local governmental entity or its employee based upon appellants' factual allegations. *See* 44 C.F.R. §§ 206.203 (describing type and extent of federal funding available under state disaster assistance grants), .432 (describing extent of federal funding available under Hazard Mitigation Grant Program, including cost sharing and limits on amount of federal funding), .433 (describing state's responsibilities under Hazard Mitigation Grant Program), .435 (describing criteria for state to determine and select eligible hazard mitigation projects), .437 (describing state's plan for administration of Hazard Mitigation Grant Program), .438 (stating that state has primary responsibility for project management and accountability). For example, section 206.203(2)(iii) references "75 percent of the Federal share," but it is expressly addressing damaged nonprofit facilities. *Id*. § 206.203(2).

*Ministerial Acts*

In their fifth issue, appellants urge that the immunity defense is "abrogated" when a state actor fails to perform a ministerial duty. Appellants argue that there is a "ministerial responsibility to comply with the commands of the Stafford Act." As previously stated, appellants failed to present any evidence to the trial court that would support a finding that any of the appellees were obligated to make a payment to appellants or that they otherwise violated the Stafford Act. Further, a claim that a state actor has failed to perform a ministerial duty is an ultra vires claim that may only be asserted against a governmental actor in his official capacity. *Heinrich*, 284 S.W.3d at 372–73. The only possible appellee subject to such a claim is Bieber, but appellants failed to plead facts or to produce evidence that would support a finding that he failed to perform a ministerial duty. *See id.* Other than naming Bieber as a defendant, appellants failed to make any specific factual allegations as to Bieber. Appellants also have not identified a statute or constitutional provision that mandated a ministerial act by a county appraiser such as Bieber. On this basis, we overrule appellants' fifth issue.

*Contract Claims*

In their fourth issue, appellants contend that appellees are not immune from contract claims and that provisions in chapter 271 of the local government code allow suit against local governmental entities and their employees. They point to section 271.152 that waives immunity to suit for certain claims against local governmental entities and section 271.153 that places limits on recoverable damages. *See* Tex. Loc. Gov't Code §§ 271.152–.153. A contract that is subject to the waiver in section 271.152 is defined to mean "a written contract stating the essential terms

of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *See id*. § 271.151(2). Appellants did not factually plead or produce evidence that they entered into a contract with any of the appellees "for providing goods or services to the local government entity." Based upon the plain language of this limited waiver of immunity, we conclude that it does not apply here. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 932 (Tex. 2010) (interpreting statute based upon its "plain language").

Appellants also argue that local governmental entities are not immune from contract claims when they contract with private parties. Even if we were to agree with appellants, appellants failed to factually plead or produce any evidence that would support a finding that they entered into a contract with any of the appellees that would support a waiver of immunity from suits for damages. *See Whitley*, 104 S.W.3d at 542 (plaintiff's burden to affirmatively demonstrate waiver of immunity). We overrule appellants' fourth issue.[6]

### Texas Immunity Law

In their third issue, appellants argue that Texas immunity law does not absolutely protect appellees from liability for each of their causes of action. We have already concluded that the trial court did not err by dismissing appellants' claims that were based upon the Stafford Act and their contract claims. As to the remaining causes of action, we are also mindful that, in addition to the motion to dismiss and plea to the jurisdiction, appellees sought no-evidence and traditional summary judgment as to each of appellants' causes of action. *See* Tex. R. Civ. P. 166a(c), (i).

---

[6] In the section of their brief addressing contract claims, appellants urge that appellees plead settlement and release based upon the contracts that were signed. They urge that the releases fail because there was no consideration for the contracts that they signed and that they were signed under duress. The only written contracts were between appellants and Jefferson County.

12

We review the trial court's decision to grant summary judgment de novo. *Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must establish that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). In a no-evidence motion for summary judgment, the movant, without presenting evidence, seeks summary judgment on the ground that there is no evidence of one or more essential elements of the nonmovant's claim, and the burden shifts to the nonmovant to produce evidence raising a fact issue. Tex. R. Civ. P. 166a(i). "A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).

When "the trial court's order granting summary judgment does not specify the basis for the ruling," as is the case here, "we must affirm the trial court's judgment if any of the theories advanced are meritorious." *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). In this context, we address appellants' remaining causes of action.

*State Tort Claims*

In their pleadings, appellants globally asserted fraud, fraud in the inducement of a contract, negligence, gross negligence, and civil conspiracy against all of the defendants. Appellants rely upon sections 101.021 and 101.022 of the TTCA to support their position that appellees are not protected by governmental immunity from these tort claims. *See* Tex. Civ. Prac.

13

& Rem. Code §§ 101.021, .022. In those two sections, the legislature granted a limited waiver of immunity from suit for certain tort claims. The issue then is whether appellants affirmatively demonstrated that appellees waived immunity from suit for damages under these two sections. *See Whitley*, 104 S.W.3d at 542. Based upon the sections' plain language, we conclude that appellants did not. *See Scott*, 309 S.W.3d at 932.

Appellants do not allege personal injury or death. *See* Tex. Civ. Prac. & Rem. Code § 101.021(2). Appellants also have not asserted a claim based upon the "operation or use of a motor-driven vehicle or motor-driven equipment." *See id*. § 101.021(1)(A). Appellants argue that "immunity is waived for grossly negligent acts relative to a premises defect," but they failed to allege or present evidence that would support a premises defect claim against appellees. *See id*. § 101.022. They argue that appellees "created a premises defect that led to the flooding of Plaintiff's residences." But to recover on a premises defect claim, a plaintiff must show that the governmental entity "possessed—that is, owned, occupied, or controlled—the premises where the injury occurred." *See County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). Appellants did not factually plead or present evidence that appellees "possessed" appellants' property. *See id*. Premises liability claims under the TTCA also are limited to claims involving "personal injury" or "death." *See* Tex. Civ. Prac. & Rem. Code § 101.021(2).

Appellants also argue that the TTCA does not apply to intentional and "constitutional torts" that are ultra vires. *See id*. § 101.057 (excluding certain intentional torts from TTCA). It was appellants' burden, however, to establish a waiver of immunity through a state statutory or constitutional provision to proceed against appellees on their state tort claims or that immunity did not apply. As we previously discussed, the only appellee who could be subject to

14

ultra vires claims is Bieber. *See Heinrich*, 284 S.W.3d at 372–73. To the extent that appellants asserted their state tort claims against Bieber, the trial court properly dismissed those claims based upon section 101.106 of the TTCA. *See* Tex. Civ. Prac. & Rem. Code § 101.106(e); *Franka*, 332 S.W.3d at 369. In their pleadings, appellants asserted the same claims against Bieber and JCAD. Under section 101.106(e), the trial court was required to dismiss the claims asserted against Bieber on the filing of JCAD's motion to dismiss. We conclude that the trial court did not err by dismissing appellants' state tort claims.

*State Statutory Claims*

Appellants globally pleaded that the defendants violated the DTPA and committed statutory real estate fraud. *See* Tex. Bus. & Com. Code §§17.46, 27.01. In their briefing to this Court, they admit that governmental immunity is not waived for their claims brought under the DTPA or the statutory real estate fraud provision. *See Dallas Cnty. v. Rischon Dev. Corp.*, 242 S.W.3d 90, 94–95 (Tex. App.—Dallas 2007, pet. denied) (concluding that legislature did not waive the county's immunity from suit under sections 17.50 and 27.01 of business and commerce code). They assert that there need be no waiver because they are bringing those claims against "an *ultra vires* actor." As previously stated, the only appellee subject to an ultra vires claim is Bieber, and appellants failed to allege or present evidence to support a claim against Bieber under either statute. The trial court did not err by dismissing appellants' state statutory claims.

*State Constitutional Claim*

Appellants pleaded a takings claim under the Texas Constitution. *See* Tex. Const. art. I, § 17. For purposes of this appeal, the takings clause states: "No person's property shall be

15

taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." *Id.* A takings claim is not barred by immunity. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007) (noting that "sovereign immunity does not shield the State from a claim based upon [the takings clause]"); *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001) (same). But appellants fail to address appellees' summary judgment motions as to this claim. *See Urena*, 162 S.W.3d at 550 (appellate court must affirm trial court's summary judgment if any ground meritorious). In their motions, appellees asserted that appellants had failed to plead facts or present evidence that would support a finding that appellees intentionally took appellants' property without just compensation for a public use. Appellees also argued that there was no case law to support a takings claim against an individual governmental actor.

"To establish a takings claim under Article I, section 17, the claimant must show that a governmental actor acted intentionally to take or damage property for a public use." *Holland*, 221 S.W.3d at 643 (citing *Little-Tex Insulation Co.*, 39 S.W.3d at 598). "Whether particular facts are enough to constitute a taking is a question of law." *Little-Tex Insulation Co.*, 39 S.W.3d at 598 (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 936 (Tex. 1998)). We limit our review to the "public use" element because it is dispositive here. *See* Tex. R. App. P. 47.1. Even if we were to assume that appellees acted intentionally "to take or damage" appellants' property, appellants failed to plead facts or present evidence that would support a finding that they did so for "public use." *See City of Austin v. Whittington*, 384 S.W.3d 766, 779 (Tex. 2012) (noting that "public use" provides benefit to public); *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 (Tex. 2004) (noting that when there is "no public benefit," "the property cannot be said to be 'taken or damaged for

16

*public use*.'") (quoting *Texas Highway Dep't v. Weber*, 219 S.W.2d 70, 71 (Tex. 1949) (emphasis added)).  Appellants also fail to cite, and we have not found, authority to support a takings claims based upon their pleaded facts against an individual such as Bieber.  We conclude that the trial court did not err by granting summary judgment in favor of appellees as to the takings claims.

### *Federal Statutory and Constitutional Claims*

In their pleadings, appellants globally asserted that the defendants violated the First and Fifth Amendments of the United States Constitution and sections 1983, 1985, and 1988 of title 42 of the United States Code.  *See* U.S. Const. amend. I, V; 42 U.S.C. §§ 1983 (civil action for "deprivation of any rights, privileges, or immunities secured by Constitution and law"), 1985 (civil action for "conspiracy to interfere with civil rights"), 1988 (addressing "[p]roceeding in vindication of civil rights").  In their briefing to this Court, appellants urge that "qualified immunity" does not protect appellees from the federal claims, that "state law sovereign immunity and state law limitations on damages do not protect local governments from liability under section 1983," and that "[l]ocal governments also have no immunity from damages flowing from their constitutional violations." Appellants again fail to address appellees' summary judgment motions as to the federal claims.  *See Urena*, 162 S.W.3d at 550.

Among other grounds, appellees asserted that appellants had failed to plead or present any evidence that would support any of their federal claims, including their civil rights and constitutional claims.  *See* U.S. Const. amend. I, V; 42 U.S.C. §§ 1983, 1985, 1988; *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (listing elements of a 1985 claim); *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (noting that "Fifth Amendment applies

only to violations of constitutional rights by United States or a federal actor"); *Mylett v. Mullican*, 992 F.2d 1347, 1349–50 (5th Cir. 1993) (noting plaintiff must show engaged in protected speech or association to support a First Amendment claim); *Paz v. Weir*, 137 F. Supp. 2d 782, 796 (S.D. Tex. 2001) (listing required elements of a 1983 claim). We agree and conclude that the trial court did not err by granting summary judgment in favor of appellees as to appellants' federal constitutional and civil rights claims.

### *UDJA Claims*

In their briefing to this Court, appellants contend that they seek declarations of the rights and responsibilities of governmental agencies and "construction of the federal Stafford Act and the obligations that Act imposes on various governmental actors and agencies." In their pleadings, however, the declaration that they sought was "that the State of Texas is required to pay the 25% matching funds in the FEMA buyout and a mandate that the Texas Comptroller of Public Accounts make such payment instanter."

In their plea and motions, appellees urged that appellants' asserted UDJA claim was not asserted against them, but against the State, and that the UDJA cannot be used to circumvent governmental immunity as to past due money damages. As to Bieber, they also asserted that their was no pleading or evidence to support any claim against him. We agree that appellants' pleaded request for declaratory relief did not address appellees, but the State. Further, a request for declaratory relief "does not alter a suit's underlying nature." *See Heinrich*, 284 S.W.3d at 371. A claim for past due money damages as a declaratory judgment claim is generally not allowed under Texas immunity law. *See id.* We also note that appellants' pleadings do not otherwise seek an

18

interpretation or challenge the constitutionality of any state statute, law, or ordinance. *See* Tex. Civ. Prac. & Rem. Code § 37.004(a). Thus we conclude that the trial court did not err by dismissing appellants' UDJA claims against appellees.

Because we conclude that the trial court did not err by ruling in favor of appellees as to all of appellants' claims whether or not they were barred by immunity, we overrule appellants' third issue.

## CONCLUSION

For these reasons, we affirm the trial court's judgment.[7]

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: July 11, 2013

_____

[7] We need not address appellees' other arguments that support affirming the trial court's judgment. *See* Tex. R. App. P. 38.1(f) (requiring appellant to "state concisely all issues or points presented for review" in court of appeals), (i) (requiring appellant's brief to "contain a clear and concise argument for the contention made, with appropriate citations to authorities and to the record"), 47.1.